\* STATE OF OHIO V. L. A. RUSSELL.

**1. RULE AS TO STATE ELECTION LAWS AFFECTING CONGRESSMEN.**

While the state may make wholesome laws for the purity of elections, and for that purpose curtail the amount of money which may be paid out by and for persons who run for office, and attach a penalty, in the nature of a fine, for the violation thereof, it has no power to say that a congressman shall not, on account of the violation of such a law, enter congress or forfeit his election.

**2. GARFIELD·LAW—UNCONSTITUTIONAL IN PART.**

In so far as the act of April 8, 1896, 92 O. L., 123, known as the Garfield Law, and entitled "an act to prevent corrupt practices at elections," declaring that the election of a person who does not comply with the provisions of the act shall be void, applies to congressmen, it is unconstitutional.

**3. WHOLE LAW NOT RENDERED INVALID.**

Inasmuch as the law in question, in sub-divison 7, clearly exempts any right on the part of the state to interfere with congressmen after they have received certificates and entered upon their duties, and inasmuch as so far as the statute extends to fines it is constitutional, the whole law is not rendered invalid by the unconstitutionality of portions referred to in preceding paragraphs.

*Harvey Keeler*, prosecuting attorney, for plaintiff.
*Frank F. Gentsch*, for defendant.

HEARD ON ERROR.

CALDWELL, J.

The case of the state of Ohio against L. A. Russell. L. A. Russell was a candidate, having received the nomination of a political party for the office of congressman. He was the candidate upon the ticket but was defeated, and sometime thereafter this action was brought, he having refused to make a return of his expenses under what is known as the

---

\* For decision of the court of common pleas, see 10 Dec., 255.

Garfield law. This action was brought under that law to recover from him the amount or an amount not exceeding one thousand dollars as provided in that law, that amount to be determined by a jury. He filed a demurrer to the petition. The demurrer was sustained and judgment for defendant to go hence. The case is brought here by the state on a petition-in-error and we are asked to consider whether the court below erred in sustaining that demurrer and in the judgment that it rendered thereon. It is claimed that the statute in question violates the provisions of the constitution of the United States so far as pertains to congressmen, and that being true, that the statute is unconstitutional under those constitutional provisions and can not be enforced, and this action therefore must fail.

The particular portions of the constitution of the United States to which we are referred are as follows:

Section 1. "All legislative powers herein granted shall be vested in a congress of the United States, which shall consist of a senate and house of representatives.

Sec. 2. "The house of representatives shall be composed of members chosen every second year by the people of the several states, and the electors in each state shall have the qualifications requisite for electors of the most numerous branch of the state legislature."

"No person shall be a representative who shall not have attained to the age of twenty-five years and been seven years a citizen of the United States and who shall not, when elected, be an inhabitant of that state in which he shall be chosen."

It is claimed that what is known as the Garfield law adds another requisite to that, and in that it is unconstitutional.

We are referred also to secs. 4 and 5 of the constitution. Section 4 is as follows:

"The times, places and manner of holding elections for senators and representatives, shall be prescribed in each state by the legislature thereof; but the congress may at any time by law make or alter such regulations, except as to places of choosing senators."

It is claimed on behalf of the state that the law amounts to nothing more than the *manner* and, on the other side, that it goes further and prescribes *a condition precedent* to holding the office.

Then sec. 5 of the same article says:

"Each house shall be the judge of the elections, returns and qualifications of its own members, and a majority of each shall constitute a quorum to do business; but a smaller number may adjourn from day to day and may be authorized to compel the attendance of the absent members, in such manner, and under such penalties as each house may provide." * * *

That is enough to read of that section.

The provisions of the statute are found in sec. 3022. There are a number of sub-divisions of that section. It is not necessary to refer to *all* of them.

The first section provides:

"No candidate for representative in the congress of the United States, or for any public office created by the constitution or laws of this state to be filled by popular election, shall, by himself or by or through any agent or agents, committee or organization, or person or persons whatsoever, in the aggregate, pay out, give, contribute," etc.

State v. Russell.

And it provides a scale within which he shall keep his expenses. And the section a little further on, near the end, provides:

" Any payment, contribution, or expenditure, or agreement or offer to pay, contribute or expend any money or thing of value, in excess of the limit prescribed by this act, for any or all such objects and purposes, is hereby declared to be unlawful, and to make void the election of the person making it."

That is, to make void the election.

The second sub-division is as to the ascertainment of the number of voters, how that is to be determined ; and the third section of the act is the statement that the candidate is to make upon his nomination and the affidavit he is to attach and subscribe.   There is nothing in that provision that prohibits, however, that he be placed upon the ticket and voted for, providing he fails to make that statement of his expenses, providing he seeks the nomination ; and that is no question in this case, because Russell did make this statement.   And that is followed by section three, setting forth all expenses of his own or of any one for him or in his behalf or against another, and the form of the affidavit therein.

Then comes the penalty (Sec. 5):   "Any person failing to comply with the provisions of the third section or of the fourth section of this act, shall be liable to a fine not exceeding one thousand dollars, to be recovered with costs, in an action brought in the name of the state by the attorney-general or by the prosecuting attorney of the county of the candidate's residence, the amount of said fine to be fixed within such limit by the jury, and to be paid into the school fund of said county."

That is as far as the law undertakes to fix any penalty upon the party who runs for the office and is defeated and who fails to make a return of his expenses.

Section 6, however, provides:

" No board, officer or officers authorized by law to issue commissions or certificates of election shall issue a commission or certificate of election to any person required by the third or fourth section hereof to file a statement or statements until such statement or statements shall have been so made, verified and filed by such person with such board, officer or officers.   No person required by the foregoing sections of this act to file a statement or statements shall enter upon the duties of any office to which he may be elected until he shall have filed all statements and duplicates provided for by the foregoing sections of this act, nor shall he receive any salary or emolument for any period prior to the filing of the same."

Then there is a provision in the very next section, subdivision seven, that if a person thus chosen enters upon the duties of his office, and it becomes known to any one who voted for him or who voted in the election, that he failed in this regard, or that his affidavit or return was false, then proceedings may be had and at the end of those proceedings the court may oust the party from the office. · Now that proceeding I only mention it because of the beginning, which is:

" At any time during the term of office of any occupant of an office created by the constitution or laws of this state to be filled by popular election and hereafter filled by such election, pursuant to the constitution or laws of this state (other than the office of member of either house of the general assembly or of the congress of the United States)." * * *

So that those persons are exempt from prosecution if they have entered upon their office; and the provisions in sec. 6 to withhold the certificate and to deny the party a right to enter upon the duties óf his office and receive any pay, have no exception whatever either of a member of congress or of a legislator.

And then sec. 1 provides as to all persons whether members of congress or persons elected to an office within the state, that his election is to be unlawful and the election is void and he gets no right under it.

Now, the first question for consideration is, does this statute undertake to add to the constitutional qualification of a person who may become a member of congress, an additional qualification? The qualifications will be well remembered,—one pertains to his age, and the other to his residence, the state in which he resides, and the other as to how long he has been a citizen of the United States. It has been held as to a great number of conditions that have been added by the different states from time to time, that they have been to add qualifications; for instance, that he should reside within his district has been held to add a qualification; that he must be of a certain age, of a certain belief, or that he must be of a certain wealth or anything of that kind, all these were added qualifications) undoubtedly, but here we have something that is called a qualification, on one side and contended on the other that it is a mere regulation of the election. And the question is, what is it? Is it not a qualification? This is certain, it is something that disqualifies a person from accepting the office. It removes him entirely from becoming a congressman under that regulation. And it is hard to see how a person can be disqualified by anything unless that thing disqualifies him and adds something when it clearly does not come under that qualifications required by the United States.

We have looked in various dictionaries to see what the word " qualification " means. Does it mean some inherent quality in the individual? Some particular characteristic of the person,such as age or as to place of residence, or may it mean something outside? The dictionaries all seem to agree that it is an enabling quality, that is, it is an enabling quality in the person, or a circumstance. To our minds, this law adds a *circumstance;* that is, the person who is elected, must have it to appear. The circumstance must exist that he has not violated this law, and in that sense which seems to be a generally accepted sense, not only general by the people, but in a legal sense as well, we think that the qualifications called for by sec. 6 of this act is an unlawful one. It might as well prescribe that he should not have violoted some other law and required him to make an affidavit that he had never stolen a horse, and never been a thief, never been convicted of a crime; he might be called upon to show by affidavit before he should be allowed to become a member of congress. It is perfectly apparent that in a matter of that kind or one that inheres in his character would be adding to the constitutional requirements.

And that being true, that part of the act would clearly be unconstitutional. But those provisions that we find to be unconstitutional pertain only to those that deprive him of the office. That a person might be fined for violation of the law of the state, need not exempt a member of congress or member of the state legislature, but if the person has received the requisite number of votes, then for the state to step in and say whether that person should be a member of congress, would entirely

State v. Russell.

supersede the rights of that party under the United States constitution. Perhaps we are not called upon to determine that, and the same might be said in regard to the legislature. So we do not undertake to say but that the state may make wholesome laws for the purity of elections and may undertake for the purpose of curtailing the amount of money that may be paid out for persons who run for office, and may attach to the violation of such law a penalty such as a fine, but may *not* in the case of a congressman say he shall not enter congress after his election. Then the question arises at once in regard to this statute. How much of this statute, therefore, is unconstitutional? So far as the consideration of this case is concerned, no part of it do we find unconstitutional, except that part that pertains to refusing a person elected to congress, a certificate and a seat, and that refusal by the state of Ohio and the state from which he is elected.

The provision in sec. 1 that says if he does not comply with the provisions of the act, that his seat shall be vacated and his election void. is, as far as congressmen are concerned, against the policy of the constitution of the United States, and so far as saying that he shall not receive a certificate of election nor enter (sec. 6) upon the duties of that office, is simply declaring the same thing that sec. 1 does in another form, and those provisons are unconstitutional, but no other part of it do we find unconstitutional. And this question in this case goes no further than I have gone.

Then the question remaining and the only question, this portion of the act being constitutional, would the legislature have passed the other portions, or one portion being unconstitutional, is the whole act so far as it pertains to the election of congressmen, unconstitutional. And the rule in this state is that before the whole act will be declared unconstitutional, where a part of it is clearly so, it must appear to be unreasonable and improbable; that the legislature would have passed the constitutional portion without the unconstitutional portion, and this rule applies to different parts of the statute. This is the rule laid down in State v. Sinks, 42 Ohio St., 345. Before we can, therefore, declare this law unconstitutional so far as it pertains to a congressman of the United States, we must find that it is unreasonable and improbable that the legislature would have passed the remaining part of the statute, the part imposing a fine upon a congressman merely, that we must find that that fact exists.

Now in examining this statute we do not say that it so appears. The legislature certainly did not intend to interfere with the rights of congress, for in sub-division seven, it clearly exempts any right on the part of the state to interfere with congressmen after they have received a certificate and entered upon their office. And if the attention of the legislature had been called to this section, it would have arranged it; it would have said that the representatives in the United States Congress should be fined. It would have provided only for a fine for the violation of this law, and so far as the statute extends to fines, we think the statute constitutional. That being true, the court below erred in sustaining the demurrer to the petition. Remanded.